IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

Lindsey Johnson,

    *Plaintiff,*

vs.

Hunter Warfield, Inc., and
Experian Information Solutions, Inc.

    *Defendants.*

Case No.: _____

Division: _____

Ad Damnum: **$20,000 + Atty Fees & Costs**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Lindsey Johnson** ("**Ms. Johnson**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Hunter Warfield, Inc.** ("**Hunter Warfield**") and **Experian Information Solutions, Inc.** ("**Experian**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Ms. Johnson, an individual consumer, against Hunter Warfield for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et. seq.* ("FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et. seq.* ("FDCPA") and against Experian for violations of the FCRA and Section 501.005, Florida Statutes.

## JURISDICTION AND VENUE

2.    Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. §1692k(d), the FCRA, 15 U.S.C. § 1681p, and Section 26.012, Florida Statutes.

3.    Hunter Warfield is subject to the provisions of the FDCPA and FCRA, and is subject to the personal jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4.     Experian is subject to the provisions of the FCRA, and is subject to the personal jurisdiction of this Court pursuant to Section 48.193, Florida Statutes

5.     Venue is proper in Hillsborough County, pursuant to Section 47.051, Florida Statutes, because the acts complained of were committed and/or caused by the Defendants within Hillsborough County.

## PARTIES

6.     **Ms. Johnson** is a natural person who, at all time relevant hereto, resided in Hillsborough County, Florida.

7.     Ms. Johnson is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).

6.     **Hunter Warfield** is a Florida corporation with a primary business address of 4620 Woodland Corporate Blvd, Tampa, FL 33614.

7.     Hunter Warfield's Florida Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.**

8.     Hunter Warfield holds a Consumer Collection Agency ("CCA") license from the Florida Office of Financial Regulation. **SEE PLAINTIFF'S EXHIBIT A.**

9.     Hunter Warfield is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses postal mail or other instrumentality of interstate commerce for its business, the principal purpose of which is the collection of debts. Alternatively, it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10.     **Experian** is an Ohio corporation with a principal business address of 475 Anton Boulevard Costa Mesa, CA 92626.

11.     Experian is registered to conduct business in the state of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

12.     Experian is a consumer credit reporting agency ("CRA") within the meaning of 15 U.S.C. § 1681a(f) and Section 501.005(1), Florida Statutes, in that Experian, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

## FACTUAL ALLEGATIONS

13.     Around July 2014, Ms. Johnson vacated an apartment that she had leased from **Camden Royal Palms,** an apartment community in Brandon, Florida.

14.     After Ms. Johnson moved, Camden Royal Palms alleged that she and Thomas Chrzanowski, Ms. Johnson's ex-boyfriend, owed $4,393 for unpaid rent, damages, and/or other fees (the "**Debt**").

15.     Having arisen from services which were for family, personal, or household purposes, specifically relating to the purchase of a license to use a space as a personal residence, the Debt meets the definition of "debt" within the meaning of the FDCPA, 15 U.S.C. § 1692a(5).

16.     Around September 2014, Camden Royal Palms assigned or otherwise placed the Debt with Hunter Warfield for collection.

17.     At some point, the Debt was simultaneously assigned for collection to Henschel & Beinhaker, P.A., a debt collection law firm in Hollywood, Florida.

<u>**Hunter Warfield's Requests of a CBR on Ms. Johnson**</u>

18.    On December 31, 2016, Hunter Warfield requested a consumer credit report regarding Ms. Johnson from Experian, a CRA.

19.    Hunter Warfield's request was recorded by Experian. **SEE PLAINTIFF'S EXHIBIT B.**

20.    To request a credit report on an individual consumer, one must have a *permissible purpose* for doing so. *See* 15 U.S.C. § 1681b.

21.    To lawfully request a credit bureau report ("CBR") from a CRA, a debt collector must be collecting a debt *which is a "credit transaction involving the consumer."* 15 U.S.C. § 1681b(a)(3)(A).

22.    "Credit" has been defined as 'the ability of [one] to borrow money, or obtain goods on time, in consequence of the favorable opinion held by the community, or by the particular lender, as to his solvency and reliability.' *People v. Wasservogle*, 77 Cal. 173, 19 Pac. 270, 1888.

23.    An apartment lease, structured so as to require the advance payment of rent, as was the case with the Camden lease, is not a "credit" transaction. *See Laramore v. Ritchie Realty Mgmt. Co.*, No. 03 C 1333, 2003 WL 22227148, at *1 (N.D.Ill. Sept.25, 2003)

24.    Ms. Johnson's lease required payment **in advance** for use of the apartment.

25.    Thus, the lease from which the Debt arose was not a "credit" transaction.

26.    Similarly, fees for late payments, damages or other claims do not constitute an extension of credit as they are due immediately.

27.    When Hunter Warfield made its request to Experian, it failed to state that its purpose was a "review of account" for collection purposes.

28.     As a result, Experian recorded the inquiry as a "hard inquiry," *i.e.*, one which is incorporated into credit reports sold to other creditors, lowers the consumer's credit score, and suggests that Ms. Johnson was seeking credit and had authorized the disclosure. *Id.*

29.     Despite still lacking any permissible purpose, Hunter Warfield *again* requested a CBR from Experian on March 7, 2017, once more characterizing it as a request for credit and resulting in an additional "hard pull" on Ms. Johnson's credit. *Id.*

## Experian's Knowledge that Hunter Warfield Lacks Permissible Purpose

30.     Prior to granting Hunter Warfield a subscriber account from which it could obtain credit reports and report credit data on consumers, Experian gathered significant information about Hunter Warfield.

31.     Experian is aware that the vast majority of Hunter Warfield's business consists of the collection of apartment or leasing debts, which are inherently not credit transactions.

32.     Experian is also aware of this because Hunter Warfield reports thousands of tradelines to it each month, all – or almost all -- of which contain Metro II Creditor Classification Codes ("CCCs") of "09," or "rental/leasing."

33.     Despite having reasonable knowledge that Hunter Warfield is requesting credit reports from it for non-credit-based transactions, Experian continues to provide reports to Hunter Warfield based solely on Hunter Warfield's representations that it has permissible purpose to obtain them.

34.     Experian has a financial interest in continuing to sell thousands of reports each month to Hunter Warfield, and willfully turns a blind eye to the fact that few, if any, of the debts Hunter Warfield collects emanate from credit transactions.

## Camden's Lawsuit against Ms. Johnson and Settlement of the Debt

35.     Around May 2017, Henschel & Beinhaker, P.A., as attorneys for Camden Royal Palms, filed a lawsuit against Ms. Johnson and Chrzanowski in Hillsborough County small claims court.

36.     Henschel & Beinhaker, P.A. claimed that with court costs and attorney fees, the debt was $5,376.12.

37.     Henschel & Beinhaker, P.A., as attorneys for Camden Royal Palms, agreed to accept $2,688.06 as full and final settlement of the debt from Ms. Johnson.

38.     Ms. Johnson paid the $2,688.06 to Henschel & Beinhaker, P.A., who sent her a letter dated February 27, 2018, stating "Please accept this letter as acknowledgement of payment received in satisfaction of the outstanding balance owed to you by CAMDEN ROYAL PALMS, LLC, and proof that your debt to CAMDEN ROYAL PALMS, LLC *has been fully satisfied*." (Emphasis added). **SEE PLAINTIFF'S EXHIBIT C.**

## Hunter Warfield's Continued Reporting of a Fully-Satisfied Debt

39.     Despite Ms. Johnson's settlement of the alleged debt, Hunter Warfield continued to report monthly to the CRAs that Ms. Johnson had an outstanding debt owed to Camden Royal Palms.

40.     In June 2018, Hunter Warfield reported that Ms. Johnson owed $3,459. **SEE PLAINTIFF'S EXHIBIT D.**

41.     In July 2018, Hunter Warfield reported that Ms. Johnson owed $3,471. *Id.*

42.     Thus, not only was Hunter Warfield reporting that a paid debt was unpaid, it was reporting that the balance was increasing.

43.     On information and belief, Hunter Warfield was reporting an increasing balance due to its own addition of interest or other fees.

44.     Hunter Warfield had no legal ability to add interest to a debt that had been paid in full.

45.     Hunter Warfield's reports to Experian also indicated that the "recent payment amount" was $0. *Id*.

46.     Hunter Warfield's reports further indicated that no payment had been made at all since placement for collection, despite the fact it simultaneously reported a balance decrease as shown in the "Balance History" section of Ms. Johnson's Experian consumer disclosure. *Id*.

### Ms. Johnson's August 2018 Dispute to Experian

47.     In August 2018, Ms. Johnson disputed the Debt to Experian, stating that the Debt with respect to her was paid in full.

48.     Experian, in response to the dispute, sent Hunter Warfield an Automated Consumer Dispute Verification ("ACDV") request and asked Hunter Warfield to make a reasonable investigation into the dispute.

49.     Hunter Warfield verified that its reported information was accurate, and confirmed its report indicating that $3,488 was past-due and in collection, that the debt was not settled, and was still an unpaid "collection account." *Id*.

50.     Hunter Warfield failed to make a reasonable investigation into Ms. Johnson's dispute. Any reasonable investigation would have quickly determined that the debt was satisfied in February 2018 and that Ms. Johnson had been released from all liability for the debt.

## Experian's Failure to Reasonably Investigate Ms. Johnson's Dispute

51.     Experian similarly failed to make a reasonable investigation into Ms. Johnson's dispute.

52.     Experian's "investigation" consisted almost exclusively of sending an ACDV to Hunter Warfield, and then relying on that response to conclude the investigation.

53.     A CRA's liability under § 1681i(a) rests on "whether the credit reporting agency could have discovered an error in a particular report through a reasonable investigation." *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).

54.     Relying solely on dispute results from a data furnisher is not reasonable, since "merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the plaintiff and (defendant)." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

55.     Experian was well aware that a dispute existed between Ms. Johnson, who had satisfied her debt in full, and Hunter Warfield, who was still reporting that she owed a debt.

56.     Even a cursory examination of the data reported by Hunter Warfield should have alerted Experian to the fact that significant problems existed and that the information reported could not be reliably verified.

57.     For example, Hunter Warfield reported a balance due of $5,519 in September 2017, $5,234 later in September 2017, $5,055 in November 2017, $4,879 in December 2017, $4,791 in January 2018, $4,704 in February 20178, and $3,442 in March 2018.

58.     Yet, despite the $2,077 decrease in balance, Hunter Warfield reported for each month a payment amount of $0.

59.     Logically, the balance of a collection account does not decrease without payment.

60.    Experian relied completely on automated systems and verification by Hunter Warfield, without any human review by Experian, to conduct its "investigation," despite the fact that: (1) the information was meritoriously disputed, (2) Ms. Johnson had paid the debt in full, and despite (3) numerous logical gaps in Hunter Warfield's reporting of the debt.

### Hunter Warfield's Failure to Cease Reporting despite Prior Knowledge

61.    In October 2018, Ms. Johnson retained the undersigned legal counsel.

62.    Ms. Johnson's attorneys contacted legal counsel for Hunter Warfield regarding the aforementioned conduct, including Hunter Warfield's reporting of a settled debt.

63.    Thus, Hunter Warfield was well aware of the problems surrounding these issues.

64.    Effective November 28, 2018, Hunter Warfield agreed to cease collection of the Camden debt and request deletion of its tradeline.

65.    However, Hunter Warfield did not stop collection, and continued to make *new* reports to Experian. **SEE PLAINTIFF'S EXHIBIT E.**

66.    Hunter Warfield continued to add interest to a debt which was not only satisfied in March 2018, but to one which it agreed to discontinue collecting from Ms. Johnson.

### Ms. Johnson's December 2018 Dispute of the Debt

67.    On December 4, 2018, Ms. Johnson again disputed the Hunter Warfield tradeline to Experian.

68.    Experian's automated systems again sent an ACDV to Hunter Warfield.

69.    Around December 17, 2018, Hunter Warfield responded to the newest ACDV that its information was "verified with updates" and instructed Experian to continue reporting that Ms. Johnson owed the debt to Camden Palms. *Id.*

70.     The "updates" Hunter Warfield made were to report a larger balance – now, purportedly, $3,514.

71.     Thus, not only did Hunter Warfield fail to correct its false reporting, but the results of its "investigation" actually *further compounded* the errors by claiming that the balance of the settled debt had increased.

72.     Experian once again failed to conduct a reasonable investigation, relying entirely upon an automated ACDV, supplemented only by a quick automated check of personal information.

73.     Experian relied on the ACDV results provided by Hunter Warfield, despite the fact that Hunter Warfield had reported false information 10 different times in 10 different monthly reports, and verified that this information was accurate.

## Hunter Warfield's Reckless Disregard for its Duties under the FCRA

74.     Hunter Warfield repeated conduct, including the reporting of a balance due and owing for a debt that had been paid, addition interest or other fees to a paid debt, verification of its information as accurate upon dispute, and then verified a second time despite agreeing, in writing, to cease and desist collection activity and request deletion of its tradeline, shows an ongoing pattern of reckless disregard for its duties under the FCRA.

75.     Hunter Warfield knew that reporting a paid apartment debt as unpaid to a nationwide CRA would have severe consequences for Ms. Johnson.

76.     Credit reporting "is powerful tool designed, in part, to wrench compliance with payment terms" from the consumer. *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).

77.     The vast majority of landlords in Hillsborough County use consumer credit reports to screen prospective tenants, and will reject an applicant whose credit record reflects unpaid obligations to other landlords.

78.     On November 25, 2018, Ms. Johnson, applied for a rental unit with LGI Homes.

79.     LGI Homes required her to pay a $50 application fee.

80.     LGI Homes obtained a credit report from Experian, which indicated Ms. Johnson had an "unpaid" housing debt to Camden Palms.

81.     Ms. Johnson's application was denied *specifically because* of the Hunter Warfield tradeline claiming a balance owed on a debt that had been paid in full.

## Experian's Violation of Fla. Stat. 501.005(17)

82.     On or about October 9, 2018 and December 26, 2018, Ms. Johnson obtained her consumer disclosure from Experian.

83.     Pursuant to Section 501.005(17), Florida Statutes, any written disclosure by a consumer credit reporting agency, pursuant to 15 U.S.C. § 1681g, to a resident of Florida must include a written summary of rights, which must be in a substantially similar form to the following:

(a) You have a right to place a "security freeze" on your consumer report, which will prohibit a consumer reporting agency from releasing any information in your consumer report without your express authorization. A security freeze must be requested in writing by certified mail to a consumer reporting agency. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent.

(b) YOU SHOULD BE AWARE THAT USING A SECURITY FREEZE TO CONTROL ACCESS TO THE PERSONAL AND FINANCIAL INFORMATION IN YOUR CONSUMER REPORT MAY DELAY, INTERFERE WITH, OR PROHIBIT THE TIMELY APPROVAL OF ANY SUBSEQUENT REQUEST OR APPLICATION YOU MAKE REGARDING A NEW LOAN, CREDIT, MORTGAGE, INSURANCE, GOVERNMENT SERVICES OR PAYMENTS, RENTAL HOUSING, EMPLOYMENT, INVESTMENT, LICENSE, CELLULAR PHONE, UTILITIES,

DIGITAL SIGNATURE, INTERNET CREDIT CARD TRANSACTION, OR OTHER SERVICES, INCLUDING AN EXTENSION OF CREDIT AT POINT OF SALE.

(c) When you place a security freeze on your consumer report, you will be provided a personal identification number or password to use if you choose to remove the freeze on your consumer report or authorize the release of your consumer report for a designated period of time after the security freeze is in place. To provide that authorization, you must contact the consumer reporting agency and provide all of the following:

    1.  The personal identification number or password.

    2.  Proper identification to verify your identity.

    3.  Information specifying the period of time for which the report shall be made available.

(d) A consumer reporting agency must authorize the release of your consumer report no later than 3 business days after receiving the above information.

(e) A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account, that requests information in your consumer report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

(f) You have the right to bring a civil action against anyone, including a consumer reporting agency, who fails to comply with the provisions of s. 501.005, Florida Statutes, which governs the placing of a consumer report security freeze on your consumer report.

84.    The required disclosures in Section 501.005(17)(b), Florida Statutes, provided in capital letters above, must be disclosed in "12-point boldface type."

85.    Neither the October nor December disclosures provided by Experian to Ms. Johnson contained a disclosure of Ms. Johnson's rights as required by Section 501.005(17), Florida Statutes.

86.    In lieu of providing the required disclosures, Experian provides a link to a separate webpage that contains a summary of certain rights pursuant to Florida law. **SEE PLAINTIFF'S EXHIBIT F.**

87.     The link provided by Experian is inconspicuous, in small font and grouped at the end of the disclosure with links to other state's consumer rights.

88.     Following the link leads to a separate webpage containing a disclosure of certain consumer rights. **SEE PLAINTIFF'S EXHIBIT G.**

89.     The separate webpage fails to disclose the language provided for in Section 501.005(17)(f), Florida Statutes - that the consumer has the right to bring a civil action against anyone, including a consumer reporting agency, who fails to comply with the provisions of Section 501.005, Florida Statutes, which governs the placing of a consumer report security freeze on your consumer report. *Id.*

90.     Experian's failure to include the consumer rights required by Florida law in its consumer disclosures is intentional. Experian instead includes a link, in small font at the end of the consumer's disclosure, to make the disclosures less accessible and increase the likelihood that the consumer will not read their rights provided by Florida law.

91.     Similarly, Experian's failure to disclose in the separate webpage that the consumer has the right to bring a civil action for anyone who fails to comply with Section 501.005, Florida Statutes, is intentional. Experian omits the required language so as to decrease the likelihood that a consumer will invoke her rights to freeze her credit report, thus saving Experian money.

92.     Records from Experian show that it sold at least twelve (12) reports regarding Ms. Johnson containing the erroneous Hunter Warfield tradeline *after* the information was disputed in August 2018.

93.     Reporting a debt to a CRA is a "communication" and an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

94.     Ms. Johnson has hired the aforementioned law firm to represent her in this action and has assigned to it her right to be reimbursed for reasonable fees.

## COUNT I
## EXPERIAN'S VIOLATIONS OF THE FCRA

95.     Ms. Johnson adopts and incorporates paragraphs 1 – 94 as if fully stated herein.

96.     Experian willfully and intentionally violated 15 U.S.C. **§1681b(a)**, on two different occasions, when it provided requested CBRs to Hunter Warfield on Ms. Johnson in December 2016 and March 2017, despite the fact that Hunter Warfield lacked a permissible purpose under the FCRA to obtain Ms. Johnson's credit report, and Experian knew, or should have known, that the underlying debt did not stem from a credit transaction.

97.     Experian's conduct violated 15 U.S.C. § **1681i(a)(1)(A)** in that Experian failed to conduct a reasonable reinvestigation regarding the disputed Hunter Warfield tradeline on two (2) separate occasions, since the investigation failed to determine, among other errors, that a debt paid in March 2018 should not report as unpaid in August and December 2018.

98.     Experian violated 15 U.S.C. § **1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Johnson in reports it sold regarding her on at least twelve (12) different occasions, by including the Hunter Warfield tradeline indicating a paid debt with a $0 balance had a balance of over $3,000 still owed, even after receipt of dispute of this information by Ms. Johnson.

99.     Experian is liable for the aforementioned violations of the FCRA and Ms. Johnson is entitled to an award of statutory damages not to exceed $1,000 *per incident*, plus reasonable attorney fees and costs.

**WHEREFORE,** Ms. Johnson respectfully requests this honorable Court to enter judgment in her favor, and against Experian, for:

    a.  The greater of Ms. Johnson's actual damages or statutory damages of **$1,000** per incident (for a total of **$16,000**) pursuant to 15 U.S.C. § 1681n(a)(1)(B) or 15 U.S.C. § 1681o(a)(1);

    b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

    c.  Such other relief that this Court deems just and proper.

## COUNT II
## EXPERIAN'S VIOLATIONS OF SECTION 501.005, FLORIDA STATUTES

100.    Ms. Johnson adopts and incorporates paragraphs 1 – 94 as if fully stated herein.

101.    Experian violated Section 501.005(17) Florida Statutes when, on two different occasions, it provided a written disclosure to a Florida resident, Ms. Johnson, pursuant to 15 U.S.C. § 1681g, which failed to provide a written summary of all rights the consumer has under Section 501.005 Florida Statutes. Specifically, Experian failed to provide any summary at all of the consumer's rights in its actual disclosure, instead providing a link in small font at the end of the disclosure to a separate webpage. The separate webpage failed to disclose that the consumer has the right to bring a civil action for anyone who fails to comply with Section 501.005, Florida Statutes.

102.    Experian's conduct is willful and intentional and engaged in primarily to reduce the number of consumers who request a security freeze on their credit reports.

103.    Experian is therefore liable for the above-stated violations of Section 501.005, Florida Statutes and Ms. Johnson is therefore entitled to statutory damages not to exceed $1,000.00 as well as other relief.

**WHEREFORE,** Ms. Johnson respectfully requests that this Honorable Court enter judgment against Experian for:

a.  Damages of **$1,000.00** per incident (for a total of **$2,000**) pursuant to Section 501.005(16), Florida Statutes;

b.  Injunctive relief, prohibiting Experian from continuing to omit the required consumer rights in its consumer disclosures;

c.  Reasonable costs and attorneys' fees pursuant to Section 501.005(16), Florida Statutes; and,

d.  Such other relief that this Court deems just and proper.

## COUNT III
## HUNTER WARFIELD'S VIOLATIONS OF THE FCRA

104.    Ms. Johnson adopts and incorporates paragraphs 1 – 94 as if fully stated herein.

105.    Hunter Warfield violated 15 U.S.C. § **1681e(b)** when, in December 2018, it failed to make a reasonable reinvestigation after receiving notice of a dispute from a CRA, Experian, as evidenced by the fact that any reasonable reinvestigation would have revealed that the debt was paid, that no further obligation by Ms. Johnson existed, and that Hunter Warfield had previously agreed to terminate collection of the debt and request deletion of its tradeline.

106.    Hunter Warfield is liable for the above-stated violation of the FCRA and Ms. Johnson is entitled to an award of statutory damages not to exceed $1,000 *per incident*, plus reasonable attorney fees and costs.

**WHEREFORE,** Ms. Johnson respectfully requests this honorable Court to enter judgment in her favor, and against Hunter Warfield, for:

a. The greater of Ms. Johnson's actual damages or statutory damages of **$1,000** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(B) or 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT IV
## HUNTER WARFIELD'S VIOLATIONS OF THE FDCPA

107.    Ms. Johnson adopts and incorporates paragraphs 1 – 94 as if fully stated herein.

108.    Hunter Warfield violated 15 U.S.C. § **1692e** and **1692e(10)** when it made false and/or misleading representations in connection with the collection of a debt and/or to obtain information about Ms. Johnson, when it:

(a) reported in December 2018 that a settled debt was unpaid and "in collection,"

(b) agreed in writing to cease collection of the debt, but then reported the debt to Experian in December 2018,

(c) added interest or fees to a balance which had already been paid, and,

(d) failed to correct its report of the debt after dispute receiving notice of dispute in December 2018, despite previously agreeing to discontinue collection and request deletion of its tradeline.

109.    Hunter Warfield violated 15 U.S.C. § **1692e(2)(a)** when it made a false representation about the nature and amount of a debt when it:

(a) reported in December 2018 that a settled debt was unpaid and "in collection,"

(b) added interest or fees to a balance which had already been paid, and,

(c) failed to correct its report of the debt after dispute receiving notice of dispute in December 2018, despite previously agreeing to discontinue collection and request deletion of its tradeline.

110.    Hunter Warfield violated 15 U.S.C. § **1692e(8)** when it communicated credit information which was known, or should have been known, to be false, when it reported to the CRAs in December 2018 that a paid debt was unpaid, and that the balance was increasing, even after written agreement to discontinue collection and request deletion of its tradeline..

111.    Hunter Warfield violated 15 U.S.C. § **1692f** when it used unfair means to collect a debt, by (1) reporting, in December 2018, a paid account as unpaid, and (2) confirming information as "accurate" even after dispute.

112.    Hunter Warfield violated 15 U.S.C. § **1692f(1)** when it added interest and other fees to a $0 balance, paid debt, when no agreement authorizing this exists nor does any law.

113.    Hunter Warfield is liable for the above-stated violations of the FDCPA, and Ms. Johnson is entitled to statutory damages not to exceed $1,000, plus her reasonable attorney fees and costs.

**WHEREFORE,** Ms. Johnson respectfully requests this honorable Court enter judgment for her, and against Hunter Warfield for:

a.    Statutory damages of **$1,000** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Unspecified actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Johnson hereby demands a trial by jury on all issues so triable.

Respectfully submitted this **December 31, 2018**, by:

> /s/ *Bryan J. Geiger*
> **Bryan J. Geiger**
> **FBN: 119168**
> **SERAPH LEGAL, P. A.**
> 2002 E. 5th Ave., Suite 104
> Tampa, FL 33605
> Tel: 813-567-1230
> BGeiger@SeraphLegal.Com
> Counsel for Plaintiff

**Exhibit List**

| | |
|---|---|
| A | Hunter Warfield's Florida Consumer Collection Agency License Record |
| B | Plaintiff's Experian Consumer Disclosure, December 26 2018, Account Inquiries Excerpt |
| C | Debt Settlement Confirmation Letter dated February 27, 2018 |
| D | Plaintiff's Experian Consumer Disclosure, October 9, 2018, Excerpt |
| E | Plaintiff's Experian Consumer Disclosure, December 26 2018, Excerpt |
| F | Plaintiff's Experian Consumer Disclosure, December 26 2018, Excerpt |
| G | Disclosures Provided by Experian via Separate Webpage |

# EXHIBIT A
# Hunter Warfield Florida CCA License



## FLORIDA OFFICE of FINANCIAL REGULATION

Smart, Efficient and Effective Regulation

### License Search Results Detail

| | |
|---|---|
| **License Name:** | HUNTER WARFIELD INC |
| **DBA Name:** | |

| | |
|---|---|
| **License Type:** | Consumer Collection Agency |
| **Status:** | Approved |
| **Status Effective Date:** | 11/30/2017 |
| **Original Date of License:** | 11/8/2005 |
| **License Number:** | CCA0900645 |
| **License Expiration Date:** | 12/31/2018 |

**License Main Address:**

| | |
|---|---|
| **Street:** | 4620 WOODLAND CORPORATE BLVD. |
| **City:** | TAMPA |
| **State:** | FL |
| **Zip Code:** | 33614 |

**License Mailing Address:**

| | |
|---|---|
| **Street:** | 4620 WOODLAND CORPORATE BLVD. |
| **City:** | TAMPA |
| **State:** | FL |
| **Zip Code:** | 33614 |

**Phone Number:**

Search for Find Lenders

New Search      Return to Search Results

Accessibility                Contact Us                Site Map
                            (850) 487-9687

## EXHIBIT B
## Plaintiff's Experian Consumer Disclosure, December 26 2018, Account Inquiries Excerpt



12/26/2018                                         Experian - Access your credit report

**Credit Inquiries**

We make your credit history available to your current and prospective creditors and employers as allowed by law. Personal data about you may be made available to companies whose products and services may interest you. As required by the Fair Credit Reporting Act, we display these requests for your credit history as a record of fact.

Inquiries shared with others ⑦

18/21

# EXHIBIT B
## Plaintiff's Experian Consumer Disclosure, December 26 2018, Account Inquiries Excerpt



12/28/2018                                    Experian - Access your credit report

Account name                        Date of request
HUNTER WARFIELD INC                 03/07/2017

Account name                        Date of request
HUNTER WARFIELD INC                 12/31/2018

18/21

# EXHIBIT C
## Debt Settlement Confirmation Letter dated February 27, 2018

### HENSCHEL & BEINHAKER, P.A.

**ATTORNEYS AT LAW**
3475 SHERIDAN STREET, SUITE 305
HOLLYWOOD, FL 33021

Telephone: (954)964-4780

Fax: (954)964-4784

February 27, 2018

LINDSEY JOHNSON



Re:   CAMDEN ROYAL PALMS, LLC
     Account No.: REDACTED

Dear LINDSEY JOHNSON:

Please accept this letter as acknowledgement of payment received in satisfaction of the outstanding balance owed by you to CAMDEN ROYAL PALMS, LLC , and proof that your debt to CAMDEN ROYAL PALMS, LLC  had been fully satisfied.

Should you or any interested party have any questions, please feel free to contact us at the address and phone number above.

**This is an attempt to collect a debt. Any information obtained will be used for that purpose.**

Very truly yours,

HENSCHEL & BEINHAKER, P.A.

Drew Beinhaker, Esq.
DB\jg

cc. CAMDEN ROYAL PALMS, LLC

**EXHIBIT D**
**Plaintiff's Experian Consumer Disclosure, October 9, 2018, Excerpt**

10/9/2018                                    Experian - Access your credit report

REDACTED

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| HUNTER WARFIELD | 6220766 | $3,488 as of 09/16/2018 | 09/2014 | Collection account. $3,488 past due as of Sep 2018. |
| 4620 WOODLAND CORPORATE BLVD | Type Collection | Credit limit or original amount $4,393 | Date of status 02/2015 | Reinvestigation information This item was updated from our processing of your dispute in Aug 2018. |
| TAMPA, FL 33614 | Terms 1 Months | High balance $0 | First reported 01/2015 | |
| 813 283 4500 | | Monthly payment $0 | Responsibility Joint with | |
| Address identification number 0371880448 | On record until Apr 2021 | Recent payment amount | THOMAS CHRZANOWSKI | |
| Original creditor CAMDEN ROYAL PALMS | | | | |

[+ Dispute]

https://www.experian.com/ncaconline/dispute?intemp=hp_viewagain                                    3/10

# EXHIBIT D
## Plaintiff's Experian Consumer Disclosure, October 9, 2018, Excerpt

10/9/2018                          Experian - Access your credit report

$0

Account history

2018
Sep   Aug   Jul   Jun   May   Apr   Mar   Feb   Jan   2017
                                                Dec   Nov   Oct   Sep   Aug   Jul   Jun   May   Apr   Mar   Feb   Jan   2016
                                                                                                                        Dec   Nov   Oct   Sep   Aug

                                          2015
Jul   Jun   May   Apr   Mar   Feb   Jan   Dec   Nov   Oct   Sep   Aug   Jul   Jun   May   Apr   Mar   Feb   Jan

Payment history guide

Collection as of Nov 2017 to Sep 2018, Dec 2016 to Sep 2017, Oct 2016, Aug 2016, Jul 2016, Jan 2016, Dec 2015, Jun 2015, Feb 2015, Jan 2015

Balance history

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Aug 2018: $3,483 / No data / No data / No data
Jul 2018: $3,471 / No data / No data / No data
Jun 2018: $3,459 / No data / No data / No data
May 2018: $3,451 / No data / No data / No data
Apr 2018: $3,444 / No data / No data / No data
Mar 2018: $3,442 / No data / No data / No data
Feb 2018: $4,704 / No data / No data / No data
Jan 2018: $4,791 / No data / No data / No data
Dec 2017: $4,879 / No data / No data / No data
Nov 2017: $5,055 / No data / No data / No data
Sep 2017: $5,234 / No data / No data / No data
Sep 2017: $5,519 / No data / No data / No data
Aug 2017: $5,312 / No data / No data / No data
Jul 2017: $5,398 / No data / No data / No data
Jun 2017: $5,376 / No data / No data / No data
May 2017: $4,927 / No data / No data / No data
Apr 2017: $4,911 / No data / No data / No data
Mar 2017: $4,895 / No data / No data / No data
Jan 2017: $4,862 / No data / No data / No data
Dec 2016: $4,830 / No data / No data / No data
Oct 2016: $4,803 / No data / No data / No data
The original amount of this account was $4,383

**REDACTED**

back to top

Accounts in good standing

**REDACTED**

https://www.experian.com/ncasonline/dispute?intcmp=hp_viewagain                          4/10

# EXHIBIT E
# Plaintiff's Experian Consumer Disclosure, December 26 2018, Excerpt

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| HUNTER WARFIELD | | $3,514 as of 12/17/2018 | 09/2014 | Collection account. $3,514 past due as of Dec 2018. |

5/21

**12/26/2018**

**Experian - Access your credit report**

| | | |
|---|---|---|
| 4820 WOODLAND CORPORATE BLVD<br>TAMPA, FL 33614<br>813 283 4500<br>Address Identification number<br>0371880448<br><br>Original creditor<br>CAMDEN ROYAL PALMS | **Type**<br>Collection<br>**Terms**<br>1 Months<br><br>**On record until**<br>Apr 2021 | **Credit limit or original amount**<br>$4,393<br>**High balance**<br>$0<br>**Monthly payment**<br>$0<br>**Recent payment amount**<br>$2,274 |

| | |
|---|---|
| **Date of status**<br>01/2015<br>**First reported**<br>01/2015<br>**Responsibility**<br>Joint with<br>THOMAS<br>CHRZANOWSKI | **Comment**<br>Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).<br>Reinvestigation information<br>This item was updated from our processing of your dispute in Dec 2018. |

**Account history**

| 2018 | | | | | | | | | 2017 | | | | | | | | | | | | 2016 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dec<br>L | Nov<br>C | Oct<br>C | Aug<br>L | Jun<br>C | Jun<br>C | May<br>C | Apr<br>C | Mar<br>C | Feb<br>C | Jan<br>C | Dec<br>C | Nov<br>C | Oct<br>C | Sep<br>L | Aug<br>L | Jul<br>C | Jun<br>C | May<br>L | Apr<br>L | Mar<br>C | Feb<br>C | Jan<br>C | Dec<br>C | Nov<br>C |

| Oct<br>NO | Sep | Aug<br>L | May<br>L | Apr<br>NO | Mar<br>NO | Feb<br>NO | Jan<br>L | Dec<br>C | Nov<br>NO | Oct<br>NO | Sep<br>NO | Aug<br>NO | Jul<br>NO | Jun<br>C | May<br>NO | Apr<br>NO | Mar<br>NO | Feb<br>C | Jan<br>C | | | |

Collection as of Sep 2017 to Dec 2018, Nov 2016 to Jul 2017, Sep 2016, Jul 2016, Jan 2016, Dec 2015, Jun 2015, Feb 2015, Jan 2015

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Nov 2018: $3,502 / No data / No data / No data
Oct 2018: $3,498 / No data / No data / No data
Sep 2018: $3,488 / No data / No data / No data
Aug 2018: $3,483 / No data / No data / No data
Jul 2018: $3,471 / No data / No data / No data
Jun 2018: $3,459 / No data / No data / No data
May 2018: $3,451 / No data / No data / No data
Apr 2018: $3,444 / No data / No data / No data
Mar 2018: $3,442 / No data / No data / No data
Feb 2018: $4,704 / No data / No data / No data
Jan 2018: $4,791 / No data / No data / No data
Dec 2017: $4,879 / No data / No data / No data
Nov 2017: $5,055 / No data / No data / No data
Sep 2017: $5,234 / No data / No data / No data
Sep 2017: $5,519 / No data / No data / No data
Aug 2017: $5,312 / No data / No data / No data
Jul 2017: $5,396 / No data / No data / No data
Jun 2017: $5,378 / No data / No data / No data
May 2017: $4,927 / No data / No data / No data
Apr 2017: $4,911 / No data / No data / No data
Mar 2017: $4,895 / No data / No data / No data
Jan 2017: $4,862 / No data / No data / No data
Dec 2016: $4,830 / No data / No data / No data
The original amount of this account was $4,393

# EXHIBIT F
# Plaintiff's Experian Consumer Disclosure, December 26 2018, Notification of Rights

12/26/2018

Experian - Access your credit report

| | 100 F St NE<br>Washington, DC 20549 |
|---|---|
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or Federal Trade Commission; Consumer Response Center - FCRA |

**Notification of Rights**

Notification of Rights for Alabama Consumers
Notification of Rights for Alaska Consumers
Notification of Rights for Arkansas Consumers
Notification of Rights for California Consumers
California Notice of Your Rights to Request and Obtain Your Credit Score
Notification of Rights for Colorado Consumers
Notification of Rights for Connecticut Consumers
Notification of Rights for Delaware Consumers
Notification of Rights for District of Columbia Consumers
Notification of Rights for Florida Consumers
Notification of Rights for Georgia Consumers
Notification of Rights for Indiana Consumers
Notification of Rights for Maryland Consumers
Notification of Rights for Massachusetts Consumers
Notification of Rights for Missouri Consumers
Notification of Rights for Montana Consumers
Notification of Rights for Nevada Consumers
Notification of Rights for New Hampshire Consumers
Notification of Rights for New Jersey Consumers
Notification of Rights for New Mexico Consumers
Notification of Rights for New York Consumers
Notification of Rights for North Carolina Consumers
Notification of Rights for North Dakota Consumers
Notification of Rights for Ohio Consumers
Notification of Rights for Oklahoma Consumers
Notification of Rights for Puerto Rico Consumers
Notification of Rights for Rhode Island Consumers
Notification of Rights for Tennessee Consumers
Notification of Rights for Texas Consumers
Notification of Rights for Vermont Consumers
Notification of Rights for Virginia Consumers
Notification of Rights for Washington Consumers
Notification of Rights for West Virginia Consumers
Notification of Rights for Wisconsin Consumers

© Experian 2018. All rights reserved.

# EXHIBIT G
## Disclosures Provided by Experian via Separate Webpage

How Security Freezes Work

Security freezes are designed to prevent a credit reporting company from releasing your credit report without your consent. However, you should be aware that using a security freeze to take control over who is allowed access to the personal and financial information in your file may delay, interfere with or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, insurance, government services or payments, rental housing, employment, investment, license, cellular telephone, utilities, digital signature, Internet credit card transaction or other services, including an extension of credit at point of sale.

When you place a security freeze on your file, you will be provided a personal identification number or password to use if you choose to remove the security freeze from your file or authorize the temporary release of your credit report for a specific person or period after the security freeze is in place. To provide that authorization, you must contact the reporting agency and provide all the following:

1.  Sufficient identification to verify your identity.

2.  Your personal identification number or password provided by the credit reporting company.

3.  A statement that you choose to remove the security freeze from your file or that you authorize the reporting agency to temporarily release your consumer report. If you authorize the temporary release of your consumer report, you must name the person who is to receive your consumer report or the period for which your consumer report must be available.

A security freeze generally does not apply to circumstances in which you have an existing account relationship and a copy of your report is requested by your existing creditor or its agents or affiliates for certain types of account review, collection, fraud control or similar activities.

If you are actively seeking credit, you should understand that the procedures involved in lifting a security freeze may slow your own applications for credit. You should plan ahead and lift a freeze, either completely if you are shopping around, or specifically for a certain creditor, a few days before actually applying for new credit.

Requesting a Free Security Freeze

To request your free security freeze, visit Experian's Freeze Center or call 1 888 EXPERIAN (1 888 397 3742) and provide the required information.

Freeze My Credit File

# EXHIBIT G
## Disclosures Provided by Experian via Separate Webpage

You may also submit your request in writing to Experian Security Freeze, P.O. Box 9554, Allen, TX 75013. Written requests should include the following:

- Your full name including middle initial (and generation)

- Social Security number

- Complete addresses for the past two years

- Date of birth

- One copy of a government issued identification card, such as a driver's license, state ID card, etc.

- One copy of a utility bill, bank or insurance statement, etc.

Make sure that each copy is legible and displays your name and current mailing address and the date of issue. Send copies of any documents you wish to provide to us and always retain your original documents.

We will send you a confirmation notice once the security freeze has been added, and you will be given a personal identification number (PIN) that will be required in order to remove the freeze temporarily (in order to apply for credit or for any transaction that requires that another party access your personal credit report) or permanently. You may select your own PIN when placing a security freeze on your file. If you would like to create a single-use PIN to be used by a certain credit grantor, log on to Experian's Freeze Center.

Additional Services

Credit Lock: An additional protection or alternative to a security freeze is to Lock your Experian credit file. Experian CreditLock allows you to easily and instantly control access to your Experian credit report in real time with one click without having to remember your PIN.

Identity Theft Protection: To see other ways in which Experian can help keep your credit and identity secure, learn about our Identity Theft Protection solutions.

Free Dark Web Scan: Get a one-time scan for your Social Security Number, Email and Phone Number, that also includes a free Experian Credit Report every 30 days on sign in, and with free credit monitoring and alerts.

Free Child ID Scan: See if your child has a credit file and a social security number that has potentially been compromised with a free child identity theft scan.